May it please the Court, David Slotnick for Appellant's Margaret Speyer et al. I'd like to reserve four minutes of my time for rebuttal. Whatever we have left on the clock is yours. Thank you, Your Honor. I think we'll sit down and say, okay, I reserve my time for rebuttal. I know you won't do that. I look forward to answering the Court's questions this morning, but I want to emphasize four basic points that appellants think are critical here. First, this case is fundamentally about the quotation of rental car rates in the State of California to Californians, not the later rental transaction in some other State. Second, the plain- When you say in- Maybe I should do your fourth thing first. But then get back to number one and talk to me about the word in. It's like the word is. It's not so clear what it means. Yes, Your Honor. Go ahead. The second point is that the plain language of the statute governs the transactions at issue here. Third, I'd like to discuss why this matters. In other words, how the quotation of unbundled rates injures consumers. And fourth, I'd like to address the point that even if Section 1936N1 does not directly apply to the transactions at issue, plaintiffs have a valid claim for relief under the California unfair competition law. Getting back to Your Honor's question, this case is fundamentally about the quotation of rental car rates to consumers in California. And I say in California because the consumers were in California. They were physically present in California at the time of the quotation. So in California modifies consumers, not quotation. That's correct, Your Honor. The communication, though, the quotation, obviously, is made over the Internet and to a consumer, received by the consumer in the State of California. And our class was carefully defined to limit the claims to consumers who make advanced reservations while they're present in the State of California. So the quotation ---- I don't mean to be too, to get slices too finely, but how do they know the consumer is in California? Your Honor, we think there are, as a practical matter, and I understand that that's an issue. And, of course, we, the named plaintiffs were present in California. We have alleged that. However, in terms of the broader group, when a person makes an advanced reservation and this complaint is limited to people who make reservations in advance, not the day of the rental, the vast, vast majority of the time, the person is going to make the reservation from his or her place of residence. There may be ---- Well, how do they know that? Your Honor, I'm ---- We believe that's just common sense. No, no. Let's walk through it. Yes, sir. You're talking about online reservation. You're not talking about somebody on the telephone, right? We're talking about both, but ---- All right. Let's talk about one or the other because it's going to get confusing otherwise. Fair enough. Let's talk about online. Yes, sir. So you are a consumer who is living in California and has a driver's license in California. And you get online. They can't tell where you're connected or they live in there from, right?  And I think under current technology, the IP address is ---- can be defined by their computers to tell them where that computer is located. And they can tell that it is connected to an IP address served by a provider in California. So I think they can tell that without even the ---- just the computers analyzing it. And I think they do that routinely because they want they being the rental partners. Hold on just one second because I do want to understand this. How do they know this is not some guy in a hotel in California making a reservation for his next stop in his world tour? Your Honor, if ---- I mean, if that's your definition, if it's a computer with an IP address located in California, and I'm not sure you're right about that. You can register domain names to IP addresses and you then give them an address, which may be true or false. But it's not clear to me that you can tell me where a particular IP address is physically located right now. Maybe you can. But in any event, isn't it so that it could be arranged so that you get the license plate, the license, so that it would be right there on the screen? Well, exactly, Judge Barron. In fact, obviously, there's a drop-down menu for listing every State already for where you're going to make the rental later on. There could equally easily be a drop-down menu asking for the residency of the renter. And in fact, they do ask for that. They ask for your ---- License number. License number, your credit card information, all of which is keyed into your zip code. And so they know. Well, but that is not as easy as you make it sound. I lived in Washington, D.C., for the better part of seven years, but always had an intent to come back to California as soon as I got up on the 9th Circuit. And I did. So I never changed my voting residence. I always voted in California. And I maintained my California driver's license. I never got the D.C. driver's license. At this time, it was permissible in D.C. I don't know if it is today. What would you do with a situation like that? And the idea of people having dual residences and, you know, domicile in one place and driver's license in one place and actually living and spending most of the time in another place is not a trivial problem. It's an issue. I mean, this is something that happens all the time. You now have two-carrier families where sometimes spouses live in different cities for the week and then get together for the weekend. I need not explain to you these complications. How do these things get sorted out? Your Honor, I think the simple solution there is, again, to ask the consumer at the time he or she is making the rental quotation or getting the rental quotation his or her place of residency. And obviously, if the defendant rental car firms want to challenge that, I mean, there may be an exceptional case where they would bother to do that. But in 99 percent of the time, that's not going to be. So as you see it, just to understand, if you are physically living in Washington, D.C., but claim California as a residence and have your driver's license there, I mean, the very case I explained to you, which I don't think is that unusual, in that case, California law would apply to you. That's what you're saying. So it's not physical presence actually being physically with feet on the ground on the soil of California. It is something else. It is having some sort of connection. Your Honor, we believe that the residency in California is critical. However, as a matter of a class definition, I mean, we would agree. So you would say that if you're a California resident at a hotel in Chicago, call Avis and make a reservation for your next stop in Dallas, California law applies to you? No, Your Honor. No, Your Honor. We do not maintain that. I'm sorry. Your driver's license is there. Your residence is there. When you ask the question of where do you live, from the drop-down menu, you say, truthfully, California, because you only have one place you're living, under this hypothetical. I understand. How would California law not apply to you, under your theory? Because our complaint is specifically limited to people who make these advance reservations while in California. Now, it may be that as a matter of defining a class, we will have to develop a mechanism to determine that. However, the named plaintiffs, this is up on a pleading motion, on a 12b6 motion, as Your Honor is aware. And the named plaintiffs were present in California. They have alleged that. And I think the Court ---- Okay. So is you limiting your claim for relief to people who actually feed on the ground on the soil of California? As well as being residents of the State, Your Honor. So somebody feed on the ground in California who is a resident of, say, New York, I mean, let's say Judge Breyer, for example, goes from here to New Orleans, let's say, and makes a reservation. That would not apply to him. Correct, Your Honor. Okay. All right. Go ahead. I just want to make sure I understood how ---- Let me ask you a question that has nothing to do with this case, but I guess I could ask my colleagues. When you have a dismissal, you had an amended complaint, and it went on a 12b6 motion after the amended complaint? Correct. Right? In the State court in California, when they grant that motion, do they give you another opportunity to replead? Your Honor, this was in Federal court, actually, in the Southern district of California. Oh, better yet. And frequently, the courts, I expected an opportunity to replead. We were not given one here. In fact, the judge entered judgment immediately following issuing his opinion. In our court, it just almost ---- it just happens almost as a matter of course. But I gather it doesn't happen that way here. It doesn't have to happen in New York, either, but it happens. Your Honor ---- Whether or not it happens after an amended complaint would also matter. But I just want to be clear that the rule here, or there really is no rule here, but more often than not, you think that you are given another opportunity to replead? More often than not, the Ninth Circuit does adhere to the general rule that amendments shall be liberally granted. And I would like to point out that this was a First Amendment complaint. There had been no preceding motion. There had been an informal conference with the court at which defendants have raised. Are you complaining about the failure to grant a leave to amend? Well, we never had the opportunity to move for leave to amend before. Amendment before us. Your Honor, we would like the leave to amend. I mean, we think that we were ---- could make some improvements to the complaint. But Judge Subraw felt, and I think quite, you know, understandably, that his ruling was as a matter of law and that there was nothing we could do to cure the problems that he found, which may well be true. I mean, if his interpretation of the statute and his decision on the unfairness or fairness of the charge is correct, then there may be nothing that we can do to cure it. I think there are changes that we could make, and I believe that we would have sought leave to amend had he not immediately entered judgment and given us that opportunity. Normally, to raise issues on appeal, you have to put them in your notice of appeal and also raise them in your blue brief. If you did raise this in your blue ---- I haven't looked at the notice of appeal. No, no. It's my ---- I should never have started it. No, no. It's fine. Well, I want to explore it. So this could have been an issue that you raised.  You didn't raise it in your notice of appeal. We didn't. And you didn't raise it in your blue brief, so under our case law, it's waived. I understand that, Your Honor. We fundamentally felt ---- I mean, you really win or lose on this theory, right? On one of the two theories, I think that's correct. If you win on this theory, then you're in. If not, I can't imagine what else you could plead. I mean, we understand your client's situation. I ---- you can't so put them ---- pull a magic fact out of their head. Your Honor, given Bell Atlantic v. Twombly or whatever, we might make some enhancements to the pleadings. But the essential elements are there, we believe. And so we didn't really take issue with Judge Subraw's ruling that this matter is resolved. I mean, I was trying to answer Judge Barrett's question. Right. It was just a concern. Not really. I knew it wasn't in your brief. I see that my time is rolling along, and I would like to address the question of why this really matters. And I think it matters in at least three respects. First of all, I think this term, concession recovery fee, or comparable terms that the rental car firms use, is confusing and deceptive to consumers by its very nature. Certainly we have alleged that it's confusing and misleading, and we should have the opportunity under this Court's decision in FTC v. Cyberspace to show that it is deceptive under this Court's standards as articulated in that case. Second, unbundling the charges in this fashion really does make it harder for consumers to make informed comparisons and decisions. And third, and this is something that arises in the comments of the Council of Better Business Bureau in the ‑‑ that we submitted in connection with the airline charges. I'd like the Court to consider why the rental car companies unbundle their charges. They don't do it just to be confusing and deceptive to consumers. There's no gain to them from that. But they are able to use this technique to get a higher total return, a higher total rate, which does injure consumers. But, Counsel, ultimately, when the consumer goes to get the car, I mean, the total amount is revealed. I mean, the customer knows what he or she is paying when they get the car. Your Honor, the customer is told the total amount. But we have alleged that this is a deceptive practice. And I think the literature, the professional, there is a reason they do it. And the professional literature, the marketing literature, bears it out. That I could refer the Court to an article by Professors Morowitz et al. in the Journal of Marketing Research called Divide and Prosper, where they discuss the fact that what they call partitioned fees that we call unbundled fees result in a total higher charge because the consumer looks at the first number that he or she is given. That's what they focus on as a matter of consumer psychology, if you will. And that is how, that is why the rental car companies try to add on these fees. That is why the National Association of Attorney Generals Task Force found them unfair and deceptive. And that is why the Council of Better Business Bureaus found these types of unbundling. Well, let's talk about why this. Do you think that the California law is having an extraterritorial effect if we apply it in this case? Your Honor, I would like to address that. I think there's no doubt that it has some extraterritorial effect. But I think under the governing test, both Supreme Court's test and this test, court's test, and I'm no expert on the Commerce Clause, but I did look at Professor Goldsmith's and Sykes' article on the Internet Endowment Commerce Clause. And they point out that there are scores of state laws that have some extraterritorial effect. Virtually every complex of law case involves such a state law. And that's not the governing test. The test in Healy is whether it has a substantial, whether it regulates wholly commerce that's extraterritorial. That is not the case here. What about the language of the statute? What in the language of the statute convinces you that it's intended to have that effect? Your Honor, there are several things. First of all, the language of the statute is not limited to in this state, language that appears in many, many other California statutes. Secondly, if you look at the structure of Section 1936N1, there are two sentences that are seemingly redundant. But the second sentence, the first sentence says, Thou shalt advertise, quote, and charge a fully bundled rate with certain enumerated exceptions. The second sentence says, Thou shalt not charge an unbundled rate. And we believe that that structure shows that the California, and the use of the word quotation in advertisement shows that the California legislature was deliberately attempting to regulate the quotation of rates to consumers in California, not simply the charges. If they had simply wanted to regulate the charges in California, they could have simply done that. What about Section 1936A4B? Are you familiar with that section? It talks about auditing and copies provided to the Assembly and Senate Committees on Judiciary, the Assembly Committee on Transportation. Then it talks specifically about the Burbank Airport. Now, why would that, why would companies that don't do business in California have to provide copies of their audits to Senate Committees in California if it were the intended, if it were not the intended legislature to limit this to California? Judge Rawlinson, that provision in this lengthy statute, which is about ten single-spaced pages, is distinct from the provision at issue here. And was added. Say you. Your Honor. But why is that? I mean, it's one provision. It deals with the subject matter.  They talk about subject matter, which deals with California, as revealed clearly in one of the subsections. There's no suggestion that JFK has to provide such information to the California Assembly, right? We don't maintain that, Your Honor. But why isn't that anchor to California the anchor that actually sinks your boat? Your Honor, I'd like to make a couple of points in that regard. First of all, that provision of the statute was added in, I believe, 2001, about 13 years after the statute was, the underlying statute was enacted. So that was a later amendment that was solely designed to allow the collection and pass-through of these consolidated facility charges, which are charges that airports impose. I mean, this is a critical distinction. The facility charges are imposed by the airports on the customer. The rental car company is simply a collection agent. But it was added to the statute 13 years after this statute, the provision we're talking about, Section N-1, was adopted. Avis argues that the definition of consolidated facility charge refers to those California airports. But as we read the statute, that's not true. Subsection A defines the term consolidated facility charge without reference to the California statutes. We certainly agree that the California legislature didn't intend to require audits of airports in other States. But if you define the term in Subsection A as including JFK, then how can you then, when it comes to auditing, use a different definition? Perhaps I've misspoke, Your Honor. Subsection A does not limit it to the California. That's why I said includes JFK. So it would, what it would allow. I mean, once you read it as including JFK, then it has to include JFK for everything, including the other provisions. You can't have the same term have two different meanings in the same statute. We're not saying that it does, Your Honor. My point is that the audit requirement is specifically key to the California in Subsection D. You keep saying that. But why? Once you have said that the term applies to airports outside of California, how can you limit it in the audit provision to only airports in California? You've already given away the game. Your Honor, the definitional provision is not limited. And that's the provision, that's the element that's incorporated in Section 1936. So why does it also apply to the audit section? If it's not limited, then JFK has to provide these reports, too. You know, Newark Airport, all those airports. The California Assembly will be buried in these reports. Why don't we hear from opposing counsel? Thank you, Your Honor. May it please the Court. William Donovan on behalf of Avis and Budget. Let me start where the panel ended, because I think you're exactly right, that the issue we've been talking about is one of many anchors that sinks Appellant's boat. The definition of customer facility charge could not be clearer in referring both to audit rights and Burbank Airport, that that phrase is intended to cover California airports only. And as Your Honors correctly pointed out, the definition of customer facility charge is expressly incorporated into the very same sentence. Mr. Donovan, assuming that's all true, which I suppose it is, how does it affect your argument, if at all, that, as we've now heard, the legislature added that language 15 years later or 13 or 17? The legislature made two amendments during the class period and when the airport fee was being implemented, which only proved our case. This is the first change. The rather unique view of 1936N1 appellants are offering today is that even though the language says advertise, quote, or charge the fee, Mr. Zlotnick, in his appellate briefs and in his argument, has not contested our position that the car rental companies have the right to assess the fee for rental in Tucson or Las Vegas or other states. He's focusing merely on the language about quotation. So number one, that reading makes no sense, that somehow the California legislature intended a paragraph on the quotation for rentals not at California airports, but somehow the charge is different. But to your point, which follows up on Judge Rollins' correct point a few minutes ago, they incorporated in their complaint at page 23 of the record on appeal, a reservation from Benavis and a budget rental. And it shows disclosure at the time of the rental of the airport concession recovery fee and the out-the-door pricing. And the receipt, which is in the record at page 47, does the same thing. You've got a practice of disclosure that is obvious to anyone who tries to make a reservation. That practice began, they say, no later than 1997. In 2001, when the amendment adding the definition of customer facility charge is added, what does the California legislature do? With this obvious practice, this actual disclosure, it is absolutely clear what the car rental companies are doing. Do they clarify the language to say it applies nationwide? No. Does the California legislature modify the language to attempt to show that somehow quotation is different than the charging of rates? No. There is an express provision added to the statute which says clearly, as I think the panel realizes, clearly confirming that the scope of the statute was only intended to apply to transactions at California airports. But we're not done. In 2004, as we point out, and appellants don't even address the issue, the California legislature passed Civil Code section 1936.05, which says for certain business customers, even at rentals at California airports, you can charge the airport concession recovery fee. And does the legislature say that the term, as he says, is deceptive? No. They give the car rental companies a safe harbor so long as the car rental companies give a good-faith estimate at the time of the rental of the actual charges that will be incurred, and as Your Honor pointed out correctly and as Mr. Zlotnick has admitted, the car rental companies fully comply. So the legislature twice has spoken since this practice began. On both occasions, they took no steps whatsoever to support the position that is being articulated by appellants. They did the opposite. They clarified the scope applying to California airports. They clearly confirmed the presumption that California statutes are not intended to apply to out-of-state transactions. And they allowed this abhorrent charge, according to appellants, to be assessed to business customers in California without designating that the name airport concession fee was deceptive. But on a consumer protection level basis, wouldn't it be appropriate to make sure that this additional charge was known to the people who were reserving cars? It is known. It is known then. This is at the time of the reservation was made. I would urge Your Honor to go back and look at page 23, which is the rental that they attached to their complaint, and they put at issue in this case. What is so odd about this case, having done a lot of consumer protection cases, is we are fully disclosing, the car rental companies are fully disclosing at the time of reservation what the price will be when you rent the car. This is not a bait and switch. This does not hide the ball. This is not advertising 1999 and you walk out, it's $80. You can go on the Avis site, you can go on the budget site, you can go on Orbit, Expedia, all those websites, and you are quoted at the time the reservation was made what the out-the-door price is going to be. And before you commit? Absolutely. You are told at the time you make the reservation, it is that much disclosure. Their odd position on appeal, which we think essentially admits the case away, is they're saying, you're right, the California legislature can't tell the great state of Nevada or Arizona or Washington what they can and can't charge for a car rental. But California somehow, they say, can make the car rental companies lie to consumers by not telling them at the time of reservation if they happen to meet their magical test of you've got one foot in California and you want to be a resident, because somehow that's wrong. This is the first consumer protection case I've ever seen where the plaintiffs are taking the position that disclosure of what they're going to get charged is the wrong, it's the deception. Counsel, I think opposing counsel's point was that on page 23, the first number you see is the base rate. That's his point, and that's $161. Then the later on on the page, the surcharges are added in. That's his point. So it comes, the approximate subtotal then becomes $206. So what's your response to his argument that marketing professionals as well as the Association of Attorneys General have labeled this as a deceptive practice? He was very careful with his words not to be misleading, but the impression that was created was misleading. The NAD report that he's referring to was issued in 1988. It was nine years before this fee was issued, and the NAD report has nothing to do with this fee. The NAD report simply said, totally consistent with our position on this case, that if you're going to advertise a price, you should tell people at the same time what the out-the-door price is going to be. The NAD did not say you can't have a $19.99 advertised price if you don't tell the total. What he's interpreting that as saying is somehow you have to have just the base rate price. In this case, and we cited the Chavars case, the consumer protection case where the California Court of Appeal dismissed a claim about the UCL and refueling charges on a demur, that no California court to our knowledge has ever held that the disclosure of the out-the-door price, whether it's a refueling charge, LDW, the airport concession recovery fee, is deceptive. The consumer today, Your Honor, and throughout the class period, and as their own documents attached to their complaint prove, know at the time of reservation what they're going to pay. You don't just get the base rate and then you walk up to the counter, or even worse, you return the car and you find out about the other charges. You're told that at the time you reserve. The customer knows. Disclosure is a good thing. The car rental companies do disclose all the charges at the time of reservation. What happens in California, obviously your client does comply with the requirements of section as to rentals in California. Absolutely. And I think that's true whether the renter is from California or not. That's right. If you are a renter from New York, Nevada, California, Timbuktu, if you rent a car at a California airport in full compliance with 1936N1, you are not quoted or charged an airport concession recovery fee. The issue that they've been complaining about is somehow. I'm sorry. Just to make sure I understand. So what happens is that the airport recovery fee is built into the daily rate or the weekly rate? Is that what it is? In somehow there may be some inclusion of that rate, but there's nothing in the record to show whether there is a full recovery of that fee through an increased base rate or not. If you respect the territorial limits of the State of California, so it doesn't matter where you're from, you are charged a rate of compliance with California law. Avis and Budget do the same thing for an Arizona rental or another State. They comply with a law where the vehicle is located. And Avis and Budget admittedly disclose at the time of reservation both the existence and the amount of the concession recovery fee and any other aspects of the rental that have been reserved, as proved by their own documentation attached to compliance. So if you're a consumer renting a car in California, businesses are not the same. The California legislature has decided that the airport concession recovery fee can be assessed to certain business renters. Yes. And the U.S. government, I should tell you, as well. I see that fee all the time. That's right. And we haven't talked about the Robinson case yet, but we should, because it's important here. In the capital leasing case in Ohio that they try to make hay out of, the Robinson court was the first that we know of that specifically addressed this issue, and they said, look, the Washington court system, and Washington was one of the courts that participated in the nag, the Washington courts were asked to say, look, is this fee deceptive? Is it not deceptive? And the Washington court said clearly, no, it's not deceptive. As long as you disclose the charge at the time of reservation, there's no deception. And guess what? 1936.05, the California legislature's view as to business rentals has exactly the same standard. The Robinson court also. I guess the difference it makes is that if you're going around shopping for rental cars, you're going to, if you sort of compare numbers for the daily rate, you can make a fully informed comparison by just comparing the number for the daily or weekly rate, whereas to compare, including all these fees, you actually have to go through the whole process of telling them how long you're going to be and how long you're going to keep the car, because it varies, right, depending on, you get the recovery fee whether you keep the car one day or whether you keep it a week or you keep it two weeks, right? So the impact on your... I can give you some good news, which is the percentage of the recovery fee does not change whether it's a one-day rental or a weekly rental, but it's not as hard as your owner suggests to find out what you're going to get charged. If you go on any site, Avis budget, their competitors, you will not, if you put in any reservation information, you will not just get the quote-unquote base rate, you will get an estimate of the total of the rental. It automatically is generated. If you go on Orbis or Expedia, you will get the daily rate and the out-the-door rate, the total rate quoted to you. And this isn't about what Expedia and Orbis do, but the good thing for consumers and the reason why this is a very bad case for consumers is they're encouraging the deception. They're telling us that somehow parsing a statute in ways that seem to me impossible to get to, that somehow the illegality here is not the assessment of the fee, they've given up that argument, but it's somehow that we can't tell people, we can't quote-unquote the fee when they show up in Tucson or Las Vegas or elsewhere, charge them the fee and see what happens. And that clearly can't be what the legislature intended. That's not what the language says. And it would lead to absurd results. They're not allowed to regulate the rates out-of-state. They've admitted it. Once they admit that, the disclosure of the charge at the time of reservation gives Avis and budget the safe harbor, as Judge Robinson court correctly found, as a capital leasing court in Ohio correctly found, and as the legislature in its wisdom confirmed in the language of 1936.05, which says, clear as day, good faith estimate of the total provided at the time of reservation gives you a safe harbor. You can charge what you want. You can call it what you want. And I think for all those reasons, the case is open. Then I say, okay, look, if you don't quote the recovery fee when you make the reservation, you're not going to be able to charge it when the person gets there. So what rent companies are going to be forced to do is to build the recovery fee into the daily charge. They're going to have to somehow engineer it in. And that will make for a fair comparison. For example, if you check Avis against Enterprise, Enterprise might be off-airport, and so their daily rate might be a lot lower. It is already disclosed in a manner to be able to tell customers whether or not an on-airport or off-airport competitor is charging the same rate or not. But the bigger issue, the first issue How is that? Because I would urge, Your Honor, to go on to any of these websites that will tell you automatically when you ask for a quote what the out-the-door price is. But I have to give them a lot of information to get that. Whereas comparing $35 with $75 with $25, if they say this is the flat rate and you get charged nothing else, I don't have to tell them who I am, where I'm from, how long I'm going to keep the car, my address and any of that stuff. Can you get a quote for this thing? You can't. To get a quote on a car, you have to at least provide the kind of car you want, where you want to pick it up, and the amount of time you want to have the car. Rates change depending on whether it's a weekend rate, a weekly rate, a rate on a Tuesday or Wednesday where a business person might want to rent a car. So the rates are different. So you do need to give that basic information about type of vehicle, location, where you're going to drop it off, and the length of the rental. You're going to get a quote for the out-the-door price. Even if I say I don't want to tell you who I am or where I live or anything like that? Yes. But you have to go to the website and put in the information about the length of the rental. You do need to give them your name to make a reservation, but not to get the quote. But I think the bigger issue, which I want to close with, assuming there are no more questions, is the simple point that the reading that they're trying to give to 1936N1 makes no sense. That they are bobbing and weaving to try to create exceptions that aren't there or interpretations that make no sense. Having admitted that the car rental companies have the right to charge the fee, and because of the customer facility charge language, and because of the 1936.05 language, and because of the Schwarz decision, and because of Robinson, and because of capital leasing, and because of presumption against extraterritoriality, in light of the admissions they made on page 3 of their brief and on page 23 of their opening brief, that the charging of the fee is lawful, they have not provided a scintilla of support for the view that somehow the legislature in 1936 didn't mean what it said when it said advertise quote or charge, because either you can't do all of it or none of it was intended to cover out-of-state transactions. And having admitted that the charging of the fee has not been regulated by 1936, has not been prohibited because the legislature didn't try and didn't have the power, they should not be allowed in this case to create a deception or in an underhanded way attempt to regulate rates that they admit they can't do directly. Thank you. Very briefly, Dan, I appreciate the Court's indulgence. Sometimes disclosures are used in a means to clarify and sometimes they're used to optimize. This charge, and it's not my judgment, it's the California legislature's judgment, this charge was used to obfuscate, and the fact that they allow it for businesses but not consumers, as Mr. Donovan conceded, simply shows that the concern is with the consumer who has a harder time understanding what a concession recovery fee is. Secondly, the, Mr. Donovan emphasized how the NAG report did not deal with this, but it clearly did not deal with this. And I'd urge the Court to look at it. The NAG report was prompted by threats from rental car companies to unbundle the charges in exactly this fashion, and that's what prompted the report, as well as the Council of Better Business Bureaus in the case of the airline fees. Your Honor, this is a deceptive practice that the legislature has held should not occur, and this Court should respect that legislative judgment. Thank you. Case is signed. You will stand for a minute. We'll next hear argument in Hayes v. Burns.
judges: Kozinski, Rawlinson, Baer